# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| JEFFREY TODD COOLEY, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Civil Action No. 4:25-cv-56 |
| § | Judge Mazzant |
| UNION PACIFIC RAILROAD § | |
| COMPANY, § | |
| § | |
| *Defendant.* § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint (the "Motion") (Dkt. #15). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. #15) should be **GRANTED**.

## BACKGROUND

### I.  Factual Background

Plaintiff Jeffrey Todd Cooley ("Plaintiff") brings this disability discrimination suit against his employer, Defendant Union Pacific Railroad Company ("Defendant") (Dkt. #25).[1] In February 2004, Defendant hired Plaintiff as a brakeman and conductor (Dkt. #25 at ¶¶ 8–9). Prior to and throughout his employment, Plaintiff underwent various color vision tests, often failing the Ishihara test and then passing a secondary color-vision

---

[1] On January 20, 2025, Plaintiff filed the instant lawsuit against Defendant (Dkt. #1). On March 4, 2025, Plaintiff filed his Second Amended Complaint (Dkt. #12). On July 24, 2025, Plaintiff filed his Third Amended Complaint (Dkt. #25), in which Plaintiff excluded his previously asserted failure-to-accommodate claim against Defendant (*see also* Dkt. #17 at p. 10). The Court considers the allegations made in Plaintiff's Third Amended Complaint (Dkt. #25) for the purpose of summarizing a factual background and making its determinations on the issue raised in the instant Motion.

test (Dkt. #25 at ¶¶ 9–12). Plaintiff continued his employment as a conductor for the next ten years, working ably and safely (Dkt. #25 at ¶ 11).

On February 1, 2014, Defendant updated its "Medical Rules," which encompassed Defendant's Fitness-for-Duty evaluations (Dkt. #25 at ¶ 14; Dkt. #25-1 at pp. 1, 4). A Fitness-for-Duty evaluation is Defendant's assessment of an employee's ability to safely perform the essential functions of that employee's position (Dkt. #25 at ¶¶ 14–15). On August 28, 2014, as part of his Federal Railroad Administration ("FRA") conductor recertification, Plaintiff failed the Ishihara color vision test (Dkt. #25 at ¶ 17; Dkt. #25-3). On September 5, 2014, Plaintiff also failed a secondary "Color Vision Field Test" (Dkt. #25 at ¶ 18; Dkt. #25-3).

On September 8, 2014, Plaintiff was placed on a Temporary Productive Work Plan (the "TPW Plan") (Dkt. #25 at ¶ 27; Dkt. #25-2). The TPW Plan, starting retroactively on September 5, 2014, and continuing to September 19, 2014, restricted Plaintiff from working as a conductor because the position required "accurate color signal recognition" (Dkt. #25 at ¶ 27; Dkt. #25-2). On September 25, 2014, Defendant notified Plaintiff of its assessment which determined that Plaintiff did not meet the FRA medical standards for vision, and Plaintiff would be permanently restricted from work requiring "accurate identification of colored train signals" (Dkt. #25 at ¶ 28; Dkt. #25-3). Through this correspondence and subsequent letter dated September 29, 2014, Defendant notified Plaintiff he was unable to identify a reasonable accommodation that would permit him to safely return to work as a conductor (Dkt. #25 at ¶ 28; Dkt. #25-3). Since September 29, 2014, Defendant has refused to allow Plaintiff to return to work and has stopped paying him (Dkt. #25 at ¶¶ 32, 34).

II.  **Procedural History**

Plaintiff was not the only litigant to take issue with Defendant's revision of the Fitness-for-Duty evaluations. On February 19, 2016, several of Defendant's employees who had been removed from their positions following an evaluation filed a lawsuit against Defendant alleging, *inter alia*, that Defendant's Fitness-for-Duty evaluations and subsequent employment decisions violated the Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq.* (the "ADA") (Dkt. #25 at ¶ 38). *Harris v. Union Pac. R.R. Co.*, 329 F.R.D. 616, 621 (D. Neb. 2019), *rev'd*, 953 F.3d 1030 (8th Cir. 2020). The proposed *Harris* class was defined as follows:

> Individuals who were removed from service over their objection, and/or suffered another adverse employment action, during their employment with [Defendant] for reasons related to a Fitness-for-Duty evaluation at any time from 300 days before the earliest date that a named Plaintiff filed an administrative charge of discrimination to the resolution of this action.

*Id.*

On February 5, 2019, the United States District Court of Nebraska certified the *Harris* class to more narrowly consist of: "All individuals who have been or will be subject to a fitness-for-duty examination as a result of a reportable health event at any time from September 18, 2014 until the final resolution of this action." 329 F.R.D. at 628. Defendant filed an interlocutory appeal of this class certification, and on March 24, 2020, the United States Court of Appeals for the Eight Circuit reversed the certification. *Harris v. Union Pacific R.R. Co.*, 953 F.3d 1030, 1039 (8th Cir. 2020). The instant lawsuit comes to this Court following the *Harris* class decertification.

On March 30, 2024, Plaintiff dual-filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (the "EEOC") and the Texas Workforce

Commission (Dkt. #25 at ¶ 43).[2] On September 4, 2024, the EEOC provided Plaintiff with a determination letter (Dkt. #25 at ¶ 44). On October 22, 2024, the EEOC provided Plaintiff with a right to sue letter (Dkt. #25 at ¶ 45). On January 20, 2025, Plaintiff filed the present suit against Defendant (Dkt. #1). Plaintiff amended his complaint twice, ultimately alleging Defendant was liable for disparate treatment disability discrimination under the ADA (Dkt. #1; Dkt. #12; Dkt. #25).

In his Third Amended Complaint (the "Complaint"), Plaintiff asserts the following regarding the *Harris* class action: (1) Plaintiff was a putative class member in the *Harris* case; (2) Plaintiff's claims against Defendant accrued on or after September 18, 2014; and (3) the *Harris* class action tolled the statute of limitations period for his claims against Defendant asserted herein from September 18, 2014 through March 24, 2020 (Dkt. #25 at ¶¶ 38–39).

On March 18, 2025, Defendant filed the instant Motion, arguing Plaintiff's ADA claim is time-barred (Dkt. #15). On April 1, 2025, Plaintiff filed his Response to Defendant's Motion (Dkt. #17). On April 7, 2025, Defendant filed its Reply (Dkt. #18). The Motion is now ripe for adjudication.

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV.

---

[2] Attached to the operative complaint is Plaintiff's dual-filed Charge of Discrimination with the EEOC and the Texas Workforce Commission - Civil Rights Division (Dkt. #25-4). Plaintiff signed this filing on January 31, 2020 (Dkt. #25-4), but Plaintiff alleges he did not file this charge until March 30, 2024 (Dkt. #25 at ¶ 43). The Court will consider January 31, 2020, as the filing date as supported by Defendant's factual background (Dkt. #15 at p. 5).

P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen,* 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the

complaint] to determine if they plausibly suggest an entitlement to relief." *Id*. "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

Defendant urges the Court to dismiss Plaintiff's Complaint because his claims are time-barred (Dkt. #15 at pp. 1, 6–11). Further, Defendant argues Plaintiff fails to state a claim for relief based upon an "actual" or "record of" disability under the ADA (Dkt. #15 at pp. 11–13). The Court considers each argument in turn.

### I. Plaintiff's ADA claim is time-barred.

Plaintiff's only claim is for disparate treatment under the ADA (Dkt. #25). Defendant argues Plaintiff failed to timely comply with the ADA's administrative prerequisites prior to commencing this action. Under the ADA, a plaintiff must exhaust their administrative remedies against their employer before pursuing their claims in federal court. *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) (citing 42 U.S.C. § 2000e-5(e)(1)). To do so, a plaintiff must file a charge of discrimination with the EEOC, or with a state or local agency with authority to grant or seek relief from the alleged unlawful employment practice, within 300 days of the defendant's alleged discriminatory act. *Id.*; 42 U.S.C. § 12117 (incorporating 42 U.S.C. § 2000e–5(e)).

Here, the applicable limitations period for Plaintiff's ADA claim began to run from the time Plaintiff knew or reasonably shown have known that Defendant's challenged conduct occurred. *Manning v. Chevron Chem. Co.*, LLC, 332 F.3d 874 (5th Cir. 2003). However, under *American Pipe & Const. Co. v. Utah*, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. 538, 554 (1974). A district court's certification of a class therefore establishes "the pertinent class definition" so that each member of the class's claims are tolled "until the class is decertified or the case is otherwise resolved." *Zaragoza v. Union Pac. R.R. Co.*, 112 F.4th 313, 319 (5th Cir. 2024) (determining plaintiff was a member of the *Harris* class, and thus, his claims were tolled because the failure of the Ishihara vision test "at least suggested that his previously certified color vision acuity may have no longer been passable, such that it met the definition of a 'reportable health event.'").

Defendant argues Plaintiff's claims are time-barred for two reasons: (1) he was never a member of the *Harris* class, meaning the limitations period continued to run; and (2) even if he was initially a member of the *Harris* class, Plaintiff was unambiguously excluded from the class when the class was certified on February 5, 2019 (Dkt. #15 at p. 6). In contrast, Plaintiff contends his discrimination claims against Defendant should benefit from the tolling period because his claims accrued after September 18, 2014—during the tolling period created by the *Harris* case (Dkt. #25 at ¶¶ 38–39; Dkt. #17 at p. 4). Specifically, Plaintiff argues his claims are based on the adverse actions taken by Defendant on September 25, 2014, when Defendant imposed permanent restrictions on his employment, and on

September 29, 2014, when Defendant determined it could not accommodate the restrictions (Dkt. #17 at p. 5).

To determine whether Plaintiff benefitted from the tolling period created in *Harris*, the Court must determine whether Plaintiff was included in the *Harris* class, and if so, how long was he included in that class. "A class is initially defined by the plaintiffs via their complaint." *Zaragoza*, 112 F.4th at 318. "As class actions progress, plaintiffs may expand, narrow, or otherwise refine their action by filing amended pleadings." *Id*. at 318. With respect to tolling,

> [W]hen a district court certifies a class, that certified class becomes the pertinent class definition. Further, the class definition persists through appeal. A subsequent decertification of that class, either by the district court or the appellate court, ends tolling going forward but does not affect the earlier class certification for tolling purposes.

*Id*. at 319.

First, looking at the then-operative pleading, the Court must determine if Plaintiff was included in the proposed class definition of the operative complaint in *Harris*, which defined the putative class as follows:

> Individuals who were removed from service over their objection, and/or suffered another adverse employment action, during their employment with [Defendant] for reasons related to a Fitness-for-Duty evaluation at any time from 300 days before the earliest date that a named Plaintiff filed an administrative charge of discrimination to the resolution of this action.

329 F.R.D. at 621.

Here, the parties agree that the operative date at issue is September 18, 2014, which is 300 days before the earliest date that a named Plaintiff filed an administrative charge of discrimination (Dkt. #15 at p. 7; Dkt. #17 at p. 4). Thus, September 18, 2014, is the start of

8

the tolling period. However, the parties disagree as to when Plaintiff was involuntarily removed from service and when he suffered an adverse employment action. Plaintiff argues Defendant's imposition of the permanent removal from his position was the adverse action at issue, which occurred *after* September 18, 2014 (Dkt. #17 at p. 5). Defendant argues Plaintiff was removed from service as a conductor on September 8, 2014, which occurred *before* September 18, 2014, and thus, excludes him from the *Harris* class as initially defined above (Dkt. #15 at p. 7).

The Court, by accepting as true all well-pleaded facts in the Complaint and viewing those facts in the light most favorable to Plaintiff, agrees with Plaintiff. *Bowlby,* 681 F.3d at 219. On September 8, 2014, Defendant placed Plaintiff on the TPW Work Plan, where he was restricted for a period of two weeks from working as a conductor but not permanently removed from service (Dkt. #25 at ¶ 27). Because Plaintiff was involuntarily removed from service and suffered an adverse employment action *after* September 18, 2014, Plaintiff was included in the *Harris* class, as originally pleaded (Dkt. #17 at p. 5). 329 F.R.D. at 621. Therefore, Plaintiff's ADA disability discrimination claim was tolled through this initial putative class definition.

Second, the Court must determine if Plaintiff was included in the *Harris* district court's certified class under the revised definition, thereby tolling his ADA claim until the *Harris* class was decertified on March 24, 2020. 953 F.3d at 1039. As stated before, the *Harris* district court certified a class of plaintiffs including: "All individuals who have been or will be subject to a fitness-for-duty examination as a result of a reportable health event at any time from September 18, 2014 until the final resolution of this action." 329 F.R.D. at 628.

Plaintiff's inclusion in the *Harris* class under *American Pipe* hinges on when he was "subject to a fitness-for-duty examination" that occurred "as a result of a reportable health event" (Dkt. #25 at ¶¶ 14, 38; Dkt. #15 at p. 4). *Harris*, 329 F.R.D. at 628; *American Pipe*, 414 U.S. at 554.

*Zaragoza* is instructive to the Court's analysis. *See* 112 F.4th at 321. In that case, the Fifth Circuit considered whether an employee's failure to pass an Ishihara color vision test determined that employee's inclusion in the *Harris* class. *Id.* at 319. The Fifth Circuit held the plaintiff's first instance failing the Ishihara color vision test "met the definition of a 'reportable health event'" under the *Harris* class definition. *Id.* at 321. The secondary light cannon test was therefore a "fitness-for-duty examination as a result of a reportable health event," and not the "reportable health event" itself. *Id.* Unlike Plaintiff, the plaintiff in *Zaragoza* failed both the Ishihara test and the secondary vision test in 2016—almost two years *after* the tolling period began on September 18, 2014, for the *Harris* class; therefore, the plaintiff in *Zaragoza* was included in the *Harris* class definition and enjoyed the tolling of his claims. *Id.*

Here, Defendant argues Plaintiff's failure of the Ishihara color vision test on August 28, 2014 was a reportable health event that caused Plaintiff to be subjected to the secondary color vision test on September 5, 2014, which Defendant considers the fitness-for-duty examination (Dkt. #15 at p. 9 (citing *Zaragoza*, 112 F.4th at 321 ("finding that failure of the regulatory Ishihara test is a 'reportable health event triggering a fitness-for-duty examination the color-vision field test")))). Thus, according to Defendant, Plaintiff was subject to a fitness-for-duty examination as a result of a reportable health *before* September 18, 2014, and,

specifically, thirteen days outside of the tolling period created by the narrowed *Harris* class definition (Dkt. #15 at p. 9). In contrast, Plaintiff argues the color vision tests he performed on August 28, 2014, and September 5, 2014, fully determined whether Plaintiff was fit for duty (Dkt. #17 at p. 9). Further, Plaintiff argues the determination was made by Defendant's Health and Medical Services over a period of time that concluded upon deciding Plaintiff was permanently restrict from his position on September 25, 2014 (Dkt. #17 at p. 10).

The Court is not convinced by Plaintiff's argument. Even accepting as true all well-pleaded facts in Plaintiff's Complaint and viewing the facts in the light most favorable to Plaintiff, Plaintiff's claim is distinguishable from *Zaragoza* because it accrued thirteen days *before* the *Harris* class tolling period began (Dkt. #25 at ¶ 18). *Bowlby,* 681 F.3d at 219. Again, on August 28, 2014, Plaintiff failed his Ishihara color vision test (Dkt. #25 at ¶ 17). Plaintiff's failure triggered Defendant's decision to carry out a secondary evaluation, and on September 5, 2014, Plaintiff subsequently failed the secondary color vision test (Dkt. #25 at ¶ 18). Plaintiff's first test was a "reportable health event" under Defendant's revised fitness-for-duty evaluations (Dkt. #25 at ¶ 17) because it indicated a "significant vision change in one or both eyes affecting… color vision" (Dkt. #25-1 at ¶ 12). *See Zaragoza*, 112 F.4th at 321. The subsequent field vision test—which Plaintiff also failed—on September 5, 2014, is the date Plaintiff was "subject to a fitness-for-duty examination" by Defendant "as a result of a reportable health event" (Dkt. #25 at ¶ 18); (Dkt. #15 at p. 4).

Accordingly, Plaintiff was excluded from the revised *Harris* class definition as initially certified on February 5, 2019. 329 F.R.D. at 628. Therefore, his disability discrimination claims were only tolled from the time they accrued until February 5, 2019.

*Harris*, 329 F.R.D. at 628; *see also American Pipe*, 414 U.S. at 554. As a result, Plaintiff's 300-day window to seek the proper administrative remedies for this cause of action closed on December 2, 2019. *See* 42 U.S.C. § 12117. However, Plaintiff did not file his Charge of Discrimination seeking administrative relief under the ADA until January 31, 2020, which was 60 days too late (Dkt. #25-4; Dkt. #15 at p. 5). Accordingly, because Plaintiff was excluded from the certified class in *Harris* on February 5, 2019, and he failed to timely comply with the ADA's administrative prerequisites prior to commencing this action, Plaintiff's disparate treatment claim under the ADA is time-barred.

Accordingly, because Plaintiff's disparate treatment disability discrimination claim is time-barred, the Court finds that Plaintiff has failed to state a plausible claim for relief under Rule 12(b)(6), and Defendant's Motion should therefore be **GRANTED**.

II. **Defendant's remaining arguments are moot or inconsequential to the Court's determination.**

Defendant raises the following additional arguments in its Motion: (1) Plaintiff's previous failure-to-accommodate claim is time-barred (Dkt. #15 at pp. 10–11); and (2) Plaintiff fails to state a claim based upon an "actual" or "record of" a disability (Dkt. #15 at pp. 11–13). These arguments are now moot. First, Plaintiff decided not to pursue his failure to accommodate claim (Dkt. #17 at p. 10) and did not include such claim in his Third Amended Complaint (Dkt. #25). Second, the Court has determined Plaintiff's disparate treatment disability discrimination claim is time-barred under the ADA, so any argument related to pleading deficiencies in that claim is inconsequential.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. #15) is hereby **GRANTED** and the case is hereby **DISMISSED** with prejudice.

All pending motions not previously addressed by the Court are **DENIED** as moot, and the Clerk is directed to **CLOSE** this civil action.

**IT IS SO ORDERED.**

**SIGNED this 3rd day of November, 2025.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE