# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| JEFFREY TODD COOLEY, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 4:25-cv-56 |
| | § | Judge Mazzant |
| UNION PACIFIC RAILROAD | § | |
| COMPANY, | § | |
| | § | |
| *Defendant*. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Plaintiff's Motion for Reconsideration of the Order Dismissing this Case (the "Motion") (Dkt. #48). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **DENIED**.

## BACKGROUND

On November 3, 2025, the Court entered its Memorandum Opinion and Order granting Defendant Union Pacific Railroad Company's ("Defendant") motion to dismiss, thereby dismissing Plaintiff Jeffrey Todd Cooley's ("Plaintiff") claims with prejudice (the "November 3 Order") (Dkt. #47). Within the November 3 Order, the Court detailed the factual and procedural background of this case and incorporates that summary herein.

In short, Defendant employed Plaintiff as a conductor (Dkt. #25). On February 1, 2014, after employing Plaintiff for ten years, Defendant updated its Medical Rules (Dkt. #25 at ¶¶ 11, 14). Defendant's Health and Medical Services ("HMS") used these Medical Rules to determine an employee's "Fitness for Duty," which is the employee's "medical and functional ability to safely perform a job, with or without reasonable accommodations, and meet medical standards

established by regulatory agencies in accordance with federal and state laws" (Dkt. #25-1 at p. 1 (citation modified)).

On August 28, 2014, Plaintiff was administered an Ishihara color vision test required by the Federal Railroad Administration ("FRA") to obtain his conductor certification, which he failed (Dkt. #25 at ¶ 17). On September 5, 2014, Defendant required Plaintiff to take a secondary color vision field test (the "September 5 Test"), which he also failed (Dkt. #25 at ¶¶ 18, 23). On September 8, 2014, Plaintiff was temporarily removed from his position as a conductor and prohibited from doing any work "requiring accurate color signal recognition" (Dkt. #25 at ¶ 27). Finally, on September 29, 2014, Defendant notified Plaintiff that, effective September 25, 2014, he was permanently restricted from working in a position that "required accurate identification of colored train signals" (Dkt. #25-3).

Many of Defendant's employees were affected by its Medical Rules. On February 19, 2016, a putative class of Defendant's current and former employees filed a class action lawsuit (the "*Harris* class"), asserting that Defendant discriminated against them because of their disabilities. *See Harris v. Union Pac. R.R. Co.*, 329 F.R.D. 616 (D. Neb. 2019), *rev'd*, 953 F.3d 1030 (8th Cir. 2020). On February 5, 2019, the *Harris* class was certified and defined as follows: "[a]ll individuals who have been or will be subject to a fitness-for-duty examination as a result of a reportable health event at any time from September 18, 2014, until the final resolution of this action." *Id.* at 628. Then, on March 24, 2020, the Eight Circuit reversed the *Harris* class certification for lack of commonality. *Harris v. Union Pac. RR. Co.*, 953 F.3d 1030, 1032 (8th Cir. 2020).

After the *Harris* class decertification, Plaintiff filed an EEOC charge of discrimination and received a letter informing him of his right to sue (Dkt. #25-4; Dkt. #25-6). On January 20, 2025,

2

Plaintiff filed this action, complaining of Defendant's violations of the Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq.* (the "ADA") (Dkt. #1).[1] Defendant moved to dismiss Plaintiff's Complaint as time-barred (Dkt. #15). Ultimately, the Court accepted Defendant's arguments, finding that Plaintiff was only entitled to the tolling period created by the *Harris* class until February 5, 2019, and dismissed Plaintiff's untimely claims under Rule 12(b)(6) (Dkt. #47).[2]

On November 28, 2025, Plaintiff filed the instant Motion, through which he asks the Court to reconsider its November 3 Order and find that that the narrowed *Harris* class definition, as certified, included him (Dkt. #48). Specifically, Plaintiff argues the Court misconstrued Plaintiff's argument and misapplied *Zaragoza v. Union Pac. R.R. Co.*, 112 F.4th 313 (5th Cir. 2024) (Dkt. #48 at p. 1). On December 11, 2025, Defendant responded (Dkt. #49). On December 23, 2025, Plaintiff replied (Dkt. #50).[3] The Motion is now ripe for adjudication.

## LEGAL STANDARD

A motion seeking to reconsider a final judgment that is filed within twenty-eight days of the judgment is considered under Federal Rule of Civil Procedure 59(e). *See Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004); *Milazzo v. Young*, No. 6:11-cv-350-JKG, 2012 WL 1867099, at *1 (E.D. Tex. May 21, 2012). This type of motion "calls into question the correctness of a

---

[1] On March 4, 2025, Plaintiff filed his Second Amended Complaint (Dkt. #12). On July 24, 2025, Plaintiff filed his Third Amended Complaint (the "Complaint") (Dkt. #25).

[2] Specifically, in the November 3 Order, the Court determined Plaintiff was excluded from the narrowed *Harris* class definition as certified on February 5, 2019. 329 F.R.D. at 628. Therefore, his ADA claims were only tolled until February 5, 2019. *Harris*, 329 F.R.D. at 628; *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974). As a result, Plaintiff's 300-day window to seek the proper administrative remedies for this cause of action closed on December 2, 2019. *See* 42 U.S.C. § 12117. However, Plaintiff did not file his Charge of Discrimination seeking administrative relief under the ADA until January 31, 2020, which was 60 days too late (Dkt. #25-4).

[3] Local Rule CV-7(f) provides that "a party who has filed an opposed motion may serve and file a reply brief responding to the issues raised in the response within seven days from the date the response is served." LOCAL RULE CV-7(f). Here, Plaintiff's replied more than seven days after the date Defendant responded. Despite it being untimely, the Court considered Plaintiff's Reply.

judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (internal quotation marks omitted) (quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). Here, Plaintiff filed their Motion for Reconsideration within twenty-eight days. Accordingly, the Court analyzes the motion under Rule 59(e).

A Rule 59(e) motion is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet*, 367 F.3d at 479 (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir 1990)). "Rule 59(e) 'serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'" *Id.* (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). "Relief under Rule 59(e) is also appropriate when there is an intervening change in the controlling law." *Milazzo*, 2012 WL 1867099, at *1 (citing *Schiller v. Physicians Res. Grp.*, 342 F.3d 563, 567 (5th Cir. 2003)). "Altering, amending, or reconsidering a judgment is an extraordinary remedy that courts should use sparingly." *Id.* (citing *Templet*, 367 F.3d at 479).

## ANALYSIS

Plaintiff urges the Court to reconsider its November 3 Order and find that he was a member of the narrowed *Harris* class, as certified on February 5, 2019 (Dkt. #48). The Court begins its analysis by noting that Plaintiff does not present any newly discovered evidence or any arguments that were previously unavailable for the Court to consider. Instead, Plaintiff argues the Court misconstrued Plaintiff's argument and misapplied *Zaragoza v. Union Pac. R.R. Co.*, 112 F.4th 313 (5th Cir. 2024) (Dkt. #48 at p. 1).

Again, the certified *Harris* class, was defined as follows: "[a]ll individuals who have been or will be subject to a fitness-for-duty examination as a result of a reportable health event at any time

4

from September 18, 2014, until the final resolution of this action." 329 F.R.D. at 628. In his Motion, Plaintiff disputes the Court's interpretation of the term "fitness-for-duty examination," arguing that the Court incorrectly determined that Plaintiff's fitness-for-duty examination took place on just one day, September 5, 2014 (Dkt. #48 at pp. 2–3). In his view, the September 5 Test, the secondary color vision test Plaintiff failed, was not the *entire* "fitness-for-duty examination," rather, the fitness-for-duty examination was Defendant's "overall process of evaluating and assessing his fitness for duty" (Dkt. #48 at p. 2 (emphasis added)).

Plaintiff argues this examination or *process* did include the September 5 Test, but it also included the HMS department's "receipt and review of the test results along with other information, such as [Plaintiff's] essential job functions, his ten-year history of correctly identifying colored train signals, and [] whether reasonable accommodations might allow [Plaintiff] to continue working as a conductor" (Dkt. #48 at p. 2). According to Plaintiff, "because HMS did not reach a decision until September 25, 2014, it is *plausible* that its fitness-for-duty examination took place, in part if not entirely, after September 18, 2014" (Dkt. #48 at p. 3 (emphasis added)).

A similar argument was made in Plaintiff's response to Defendant's motion to dismiss (*Compare* Dkt. #17 at pp. 1, 8–10, *with* Dkt. #48 at p. 3). In his response, Plaintiff argued "the term 'fitness for duty examination' refers to more than just medical testing" and "it is clear that [Plaintiff] was subject to a fitness-for-duty examination, in whole or in part, on or after September 18, 2014" (Dkt. #17 at pp. 1, 8–10). The Court understood Plaintiff's argument and relayed it as such in the November 3 Order (Dkt. #47 at p. 11 ("Plaintiff argues the determination was made by Defendant's Health and Medical Services over a period of time.")).

Although Plaintiff rehashes the same argument through the instant Motion, he does not cite to any new legal authority (Dkt. #48). Instead, Plaintiff takes issue with the Court's reliance on *Zaragoza* in finding that the September 5 Test was the *entire* "fitness-for-duty examination" (Dkt. 48 at p. 4). Plaintiff argues that in *Zaragoza*, the Fifth Circuit did not need to address the whether Defendant's "fitness for duty examination" included other "subsequent events" (Dkt. #48 at p. 4). The Court agrees. In *Zaragoza*, the secondary color vision test administered to the plaintiff occurred after September 18, 2024, meaning the Fifth Circuit did not need to decide whether the fitness-for-duty examination was the secondary color vision test, alone, or some "overall process" as Plaintiff suggests. However, this determination does not change the Court's analysis or the Court's ruling.

In Plaintiff's Complaint, Plaintiff alleges the following: (1) Defendant "had and relied on the test results from the September 5, 2014 test when it made the employment *decisions* complained herein"—namely, the *decisions* to temporarily and permanently remove Plaintiff from his conductor position (Dkt. #25 at ¶ 25 (emphasis added)); and (2) "[b]ased on [Plaintiff]'s vision tests, up to and including the September 5, 2014 test, [Defendant] had in its possession documents indicating to it that [Plaintiff] was substantially impaired with respect to the major life activities of seeing and seeing in color" (Dkt. #25 at ¶ 25).

The Court turns to Defendant's Medical Rules, which explains that a evaluations completed by HMS may include: "(1) regulatory medical certification requirements; (2) drug screen; (3) medical, psychological, and/or functional evaluations, (4) obtaining additional medical records for review by HMS, and (5) other information as deemed necessary by HMS" (Dkt. #25-1 at p. 4). Assuming Plaintiff's argument is true, that the fitness-for-duty examination was the

"overall process of evaluating and assessing his fitness for duty," then it *may* be true that the examination included the September 5 Test and continued past September 18, 2014, but Plaintiff did not allege that Defendant took any of these enumerated actions after September 18, 2014, in his Complaint (Dkt. #48 at p. 2). In fact, Plaintiff did not assert that Defendant took *any* action after the September 5 Test, except for notifying him of its fitness-for-duty decisions—that he was temporarily removed from his position on September 8, 2014, and that he was permanently removed from his position effective September 25, 2014 (*See* Dkt. #25).[4] Moreover, Plaintiff does not provide the Court with any newly discovered evidence suggesting Defendant continued its evaluation, as defined by Defendant's Medical Rules, past September 18, 2014. As such, any contention, now, that the fitness-for-duty examination may have taken place, in part or entirely, after September 18, 2014, is hypothetical.

Accordingly, the Court's ruling in its November 3 Order stands. Plaintiff was not a member of the narrowed *Harris* class definition, as certified on February 5, 2019. 329 F.R.D. at 628. Therefore, his ADA claims were only tolled until February 5, 2019. *Harris*, 329 F.R.D. at 628; *see also Am. Pipe*, 414 U.S. at 554. As a result, Plaintiff's 300-day window to seek the proper administrative remedies for this cause of action closed on December 2, 2019. *See* 42 U.S.C. § 12117.

---

[4]  In his response to Defendant's motion to dismiss, Plaintiff did argue the following: "[t]he record does not indicate when HMS got involved and began its examination regarding [Plaintiff's] fitness for duty, but it is a certainty that critical parts of the fitness-for-duty examination (such as the most important part, a *final determination*) took place after September 18, 2014" (Dkt. #17 at p. 10 (emphasis added)). Here, Plaintiff seemingly argued that Defendant's final determination was a *critical part* of the fitness-for-duty examination. However, Defendant's Medical Rules refers to its "final determination" as HMS's "Fitness-for-Duty Decision" (Dkt. #25-1 at p. 7). Specifically, Defendant's Medical Rules include a section titled "Health and Medical Services Fitness-for-Duty Decisions," which notes that *after* a Fitness-for-Duty evaluation is complete, HMS will "determine if the employee/applicant is medically and functionally able to safely perform his/her job and make the following designations: Fit for Duty, Fit For Duty – with Restrictions, or Not Fit for Duty" (Dkt #25-1 at p. 7 (citation modified)). It is clear, Defendant's "fitness-for-duty decision" comes *after* Defendant's "fitness-for-duty evaluation." As such, a final determination is not the same as an examination. Plaintiff makes no argument in the instant Motion asking the Court to equate a "fitness-for-duty decision" with a "fitness-for-duty examination" (*See* Dkt. #48). Nor can he.

Because Plaintiff did not file his Charge of Discrimination seeking administrative relief until January 31, 2020, Plaintiff's disparate treatment claim under the ADA is time-barred.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion for Reconsideration of the Order Dismissing this Case (Dkt. #48) is hereby **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 27th day of April, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE